UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANNE NICHOLSON,

                                Plaintiff,

v.                                                                6:13-CV-01296

                                                                (FJS/TWD)

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

APPEARANCES:                              OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ       PETER W. ANTONOWICZ, ESQ.
*Counsel for Plaintiff*
148 West Dominick Street
Rome, New York, 13440

HON. RICHARD S. HARTUNIAN            DANIEL R. JANES, ESQ.
United States Attorney for the             Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL           STEPHEN P. CONTE, ESQ.
Social Security Administration             Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the

Honorable Frederick J. Scullin, Jr., United States Senior District Judge, pursuant to 28 U.S.C.

§ 636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in

accordance with General Order 18 of this Court which sets forth the procedures to be followed

when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral

argument was not heard. For the reasons discussed below, it is recommended that the

Commissioner's decision be affirmed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is currently 48 years old. (Administrative Transcript at 146, 156.[1]) She has a

high school diploma, an associate's degree, and has also attended nursing school. (T. at 40-41,

46, 253, 289.) She has a driver's license, and has worked as a home health aid and customer

service representative. (T. at 33-37.) Plaintiff alleges disability due to attention deficit

hyperactivity disorder ("ADHD"), body dysmorphic disorder, obsessive compulsive disorder

("OCD"), and depression. (T. at 44, 160.)

Plaintiff applied for disability insurance benefits on June 8, 2010, alleging disability as of

October 1, 2009. (T. at 14, 160.) The application was initially denied on December 21, 2010.

(T. at 67.) Plaintiff requested a hearing which was held on February 27, 2012, before

Administrative Law Judge ("ALJ") Hortensia Haaversen, who denied the application in a

decision dated July 24, 2012. (T. at 14-24, 28-64.) Plaintiff's last date insured, based upon her

earnings record, is December 31, 2014. (T. at 16.) On September 17, 2013, ALJ Haaversen's

decision became the final decision of the Commissioner when the Appeals Council denied

Plaintiff's request for review. (T. at 1-4.) Plaintiff commenced this action on October 18, 2013.

---

[1]    The Administrative Transcript is found at Dkt. No. 10. Citations to the
Administrative Transcript will be referenced as "T" herein.

(Dkt. No. 1.)

## II.   APPLICABLE LAW

### A.   Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("S.S.A.") promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age,

education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.)  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540

U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v.

Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.

1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the

defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of

working.  *Id.* (quoting *Perry v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

**B.**     **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).  A reviewing court may not

affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied,

even if the decision appears to be supported by substantial evidence.  *Johnson v. Bowen*, 817

F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42

U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "An ALJ must set forth

the crucial factors justifying his findings with sufficient specificity to allow a court to determine

whether substantial evidence supports the decision."  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248

(N.D.N.Y. 2010);[2] *see Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be 'more than a mere scintilla' of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III. THE ALJ'S DECISION

Here, the ALJ ultimately found that Plaintiff was not disabled at step five of the five-step analysis. (T. at 22-23.) The ALJ found that Plaintiff's severe impairments included OCD, ADHD, adjustment disorder with depressed mood, and history of polysubstance abuse. (T. at 16.) The ALJ further found that none of the impairments met or equaled the severity of a listed

---

[2]     On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Commissioner of Social Security*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55322 (N.D.N.Y. May 17, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Ross v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of work at all exertional levels but with the following nonexertional limitations: that she is able to follow simple directions and instructions, perform simple tasks independently, able to maintain concentration and attention for such tasks, that she is able to maintain a regular schedule, that she is able to learn new tasks, that she could perform complex tasks independently, that she is able to relate with others but may have difficulty dealing with stress and therefore, she is limited to only low stress jobs defined as only occasional decision making and changes in the work setting, and there should be no production pace work.  (T. at 18.)

## IV.     THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ's determination of Plaintiff's RFC was not supported by substantial evidence because the ALJ erred in assessing the Plaintiff's credibility (Dkt. No. 14 10-13[3]) and that ALJ Haaversen erred in failing to properly evaluate the opinion of treating provider Toni McCormick, Psy.D.  *Id.* at 10-17.  Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed.  (Dkt. No. 17.)

## V.     DISCUSSION

### A.     The RFC Determination

A claimant's RFC is the most the individual can do despite his or her limitations.  20

---

[3]     Citations to page numbers in the parties' briefs reference the actual page number in the brief, not the page number assigned by the Court's electronic filing system.

C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Ordinarily, RFC is the individual's maximum

remaining ability to do sustained work activities in an ordinary work setting on a regular and

continuing basis, and the RFC assessment must include a discussion of the individual's abilities

on that basis. A regular and continuing basis means eight hours a day, for five days a week, or an

equivalent work schedule. *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a

physician's opinion. 20 C.F.R. 404.1546(c). In determining RFC, the ALJ can consider a variety

of factors including a treating physician's or examining physician's observations of limitations,

the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting

effects of all impairments even those not deemed severe. *Id.* at § 404.1545(a). Age, education,

past work experience, and transferability of skills are vocational factors to be considered.

*Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by

evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's

ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. §§ 404.1569a(a),

404.1569a(b), and 416.969a(a). Nonexertional limitations include mental impairments and

difficulty performing the manipulative or postural functions of some work such as reaching,

handling, stooping, climbing, crawling, or crouching. *Id*.

"The RFC can only be established when there is substantial evidence of each physical

requirement listed in the regulations." *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430,

440 (N.D.N.Y. 2004) (citation omitted). In assessing RFC, the ALJ's findings must specify the

functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's

capacities are not sufficient. *Roat,* 717 F. Supp. 2d at 267 (citation omitted). RFC is then used to determine the particular types of work a claimant may be able to perform. *Whittaker*, 717 F. Supp. 2d at 440.

## B.    Credibility Evidence

Part and parcel to the RFC determination is the ALJ's review of the credibility of Plaintiff and the ALJ's review of the medical opinion evidence. The Court reviews an ALJ's findings of fact under a substantial evidence standard. "It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dept. of Health & Human Servs*., 728 F.2d 588, 591 (2d Cir. 1984) (citation and internal punctuation omitted). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529; *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); *see* SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). The ALJ is required to consider all of the evidence of record in making the credibility assessment. *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)).

First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *2. This finding "does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms." *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. *Id.* An individual's statements about his pain are not enough by themselves to

8

establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *Id.* Here, the ALJ determined that Plaintiff's medically determined impairment could reasonably be expected to cause the symptoms alleged by Plaintiff. (T. at 20.)

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "'consider the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence.'" *Genier,* 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(a)); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. SSR 96-7p, 1996 WL 374186, at *2.

The ALJ must consider all evidence of record, including statements the claimant or others make about his or her impairments, restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)). A claimant's "symptoms can sometimes suggest a greater level of severity than can be shown by

the objective medical evidence alone." SSR 96-7p, 1996 WL 374186, at *3. However, when the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3)(I)-(vii); 416.929(c)(3)(I)-(vii).

Here, Plaintiff argues that the ALJ erroneously diminished Plaintiff's credibility by indicating the Plaintiff had a history of marijuana use and incarceration, but that she testified she never treated for substance abuse and never took drugs other than what was prescribed for her. (Dkt. No. 14 at 10; *see also* T. at 19.) Plaintiff also argues there is nothing in the record indicating she used marijuana or was incarcerated other than an Agency examiner's statement to that effect in a summary, and therefore the credibility determination was not supported by substantial evidence. (Dkt. No. 14 at 10; *see also* T. at 287.) Plaintiff further argues that the ALJ erroneously failed to consider the symptom-related factors since Plaintiff's statements about her symptoms are consistent with the medical evidence. (Dkt. No. 14 at 11-12.) The Court does not agree with Plaintiff's arguments. Even if the evidence submitted by the State agency psychologist was erroneous regarding Plaintiff's history of substance abuse or incarceration, the ALJ was entitled to rely on such information because it was in the record. (T. at 287; *see also*

252, 259.[4])  Nevertheless, the ALJ did not solely base his credibility determination on any

substance abuse issue.  Thus, even excluding the information about substance abuse and as

explained more fully below, the ALJ properly reviewed the symptom related-factors, and

discussed a variety of those factors in view of other evidence in the record such that I find the

credibility determination is supported by substantial evidence.  (T. at 20-21.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective

medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but

must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the

determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651

(N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, 96 Civ. 9435 (JSR)(SEG), 1999 WL 185253, at *5,

1999 U.S. Dist. LEXIS 4085, at *15-16 (S.D.N.Y. Mar. 25, 1999) (citations omitted)).  "A

finding that [a claimant] is not credible must . . . be set forth with sufficient specificity to permit

intelligible plenary review of the record."  *Williams ex rel Williams*, 859 F.2d at 260-61 (citation

omitted) (finding that failure to make credibility findings regarding claimant's critical testimony

"undermines the Secretary's argument that there is substantial evidence adequate to support his

conclusion that claimant is not" disabled).  "Further, whatever findings the ALJ makes must be

consistent with the medical and other evidence."  *Id*. at 261 (citation omitted) ("[A]n ALJ must

assess subjective evidence in light of objective medical facts and diagnoses.").

In making the credibility determination here, the ALJ reviewed Plaintiff's activities of

daily living, the exam findings of the medical professionals, her school activities, the medications

---

[4]        The record does indicate the Plaintiff had concerns about the amount of wine she
consumed since she told one of her providers that she quit drinking wine because she "lashes
out" more when she drinks.  (T. at 259.)

she took and their effectiveness, and the treatment Plaintiff received.  (T. at 20.)  Plaintiff was
able to attend nursing school and do well in the academic part of the training.  (T. at 39-41, 46,
233, and 266.)  Although she was unable to successfully complete the clinical portion of nursing
training, she nevertheless was able to drive; she was able to enjoy motorcycling, snow boarding,
and reading textbooks; she traveled on a weekend trip with her boyfriend and to a college campus
with her daughter; and she exercised by lifting weights and doing cardiopulmonary activities.  (T.
at 37, 39-41, 47, 239, 241, 243-44, 250, 252, 292, and 340.)  Plaintiff also continued to pursue
her nursing studies by enrolling in pharmacology courses in January 2011.  (T. at 294-95.)  In
November of 2010, she reported to the consultative psychiatric examiner that she had not worked
as a home health aide since 2008 (T. at 289), yet the notes of her treatment providers show she
was working in home care in January of 2009, and in June, September, October, and December
of 2010.  (T. at 247, 270, 300, 302, and 305.)  The ALJ considered that the treatment records of
her providers also showed her symptoms improved when she took her medications as prescribed.
(T. at 20, 228, 235, 239-40, 261-62, 305, 307, 311, and 324-25.)  At many office visits, her
providers indicated her condition was "stable" or "improved" or she was doing better, and doing
well in classes.  (T. at 228, 233, 235, 239-40, 243-44, 261-62, 268-69, 294, 296, 298, 300, 302,
305, 307, 311, 324, and 339.)  The record also shows that sometimes she did not take her
prescribed medications because she felt she did not need certain medications.  (T. at 324.)  The
ALJ properly considered Plaintiff's failure to comply with medication treatment as prescribed as
a factor weighing against her credibility, particularly because she had continued counsel from her
treatment providers to maintain the medication regimen.  (T. at 20-21; 233-34, 239-42, 260, 300-
06, 309-10, and 324-25.)

Based upon the above, I find that the ALJ properly set forth her reasons for finding Plaintiff's claims inconsistent with regard to the intensity, persistence, and limiting effects of her symptoms and that the credibility determination is based upon proper legal principles and supported by substantial evidence.

## C.   Dr. McCormick's Opinion Evidence

Plaintiff argues that the ALJ erred in failing to give greater weight to the medical opinion provided by treating psychologist, Dr. Toni McCormick, and, as such, the RFC was not properly supported by substantial evidence and was the product of legal error.  (Dkt. No. 14 at 14-17.) The Commissioner argues that the ALJ properly evaluated all of the medical evidence including the opinions of treating providers.  As discussed in more detail below, I agree with the Commissioner.  I find that the ALJ's assignment of "little weight" to the opinion of Dr. McCormick was proper because the opinion is not consistent with Dr. McCormick's records, and the medical evidence overall.  The ALJ gave "good reasons" for the weight assigned to Dr. McCormick's opinion.

### 1.   Treating Physician Rule

The medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals.  "If . . . a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence . . . [it] will [be] give[n] controlling weight."  20 C.F.R. § 404.1527(c)(2).  Medically acceptable techniques include consideration of a patient's report of complaints and the patient's history as essential diagnostic tools.  *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003).  Generally, the longer a treating physician has treated the

claimant and the more times the claimant has been seen by the treating source, the more weight the Commissioner will give to the physician's medical opinions. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)(I)).

An opinion from a treating source that the claimant is disabled cannot itself be determinative. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

An ALJ who refuses to give "controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). This analysis must be conducted to determine what weight to afford any medical opinion. 20 C.F.R. § 404.1527(c). This is necessary because the ALJ is required to evaluate every medical opinion received. *Id.*; *see also Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) (finding that the ALJ failed to satisfy the treating physician rule when he discounted a report because it was incomplete and unsigned). These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. *Id.* at § 404.1527(c)(2)-(6).

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical

experts and the opinions are contradicted by other substantial evidence in the record. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). Other findings, including the ultimate finding of whether the claimant is disabled, are reserved to the Commissioner. *Snell*, 177 F.3d at 133.

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell*, 177 F.3d at 134). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell*, 177 F.3d at 133; *Halloran*, 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

2.      Toni M. McCormick, Psy.D.

According to the records submitted on this claim, Plaintiff underwent treatment with psychologist Dr. McCormick from October of 2008 to November of 2011. (T. at 255-70, 339-41.) Dr. McCormick provided medical source statements dated April 7, 2011, February 14, 2012, and December 18, 2012. (T. at 318, 329, 342.) In the December 18, 2012, source statement which was submitted to the Appeals Council, Dr. McCormick set forth the opinion that Plaintiff had several marked restrictions. (T. at 342-43.) However, the records submitted show Plaintiff had not treated with Dr. McCormick in over a year prior to December 18, 2012. (T. at

339.)

On April 7, 2011, Dr. McCormick found that Plaintiff had moderate difficulties in making judgments on complex work-related decisions, and mild or no difficulties in *all* other areas. (T. at 318-22.) This report was based upon twelve treatment visits beginning in October of 2008 through December of 2010. (T. at 255-70.) By February 14, 2012, Dr. McCormick opined that Plaintiff had deteriorated so much that she had marked limitations in most areas and could not hold a job. (T. at 329-31.) Yet the record reflects only three treatment visits between the April 7, 2011, date of the prior source statement, and the February 14, 2012, source statement. (T. at 339-41.) In assigning "little weight" to the opinions of Dr. McCormick, the ALJ correctly found Dr. McCormick's opinions were not consistent with her own medical records and the records of other providers, Jeannine Bordonaro, M.D., a psychiatrist, and Psychiatric Nurse Practitioner Jane Miller. (T. at 21-22.)

As noted, Plaintiff only saw Dr. McCormick on three occasions between April 7, 2011, and February 14, 2012. (T. at 339-41.) During that time, Dr. McCormick found that: Plaintiff was "slightly worse" on June 13, 2011 (T. at 341); that "doing weights" grounded Plaintiff on August 22, 2011 (T. at 340); and that Plaintiff was "improved" on November 2, 2011 (T. at 339). During that same time period in 2011, Plaintiff was seen by Nurse Practitioner Miller who found Plaintiff "doing well, better with meds" (T. at 324); her mood was "more stable and affect much brighter" (*id*.); she started nursing school and believed she was "doing better" and was "less depressed" (*id*.); she was not taking one of her prescriptions because she "feels she does not need it" (T. at 325); and her mood was stable and she was "compliant with meds" (*id*.).

In early 2009, Dr. Bordonaro prescribed medications to address Plaintiff's psychiatric

conditions including ADHD and OCD. (T. at 247-53.) Over the course of treatment from 2009 through early 2011, Dr. Bordonaro's records confirm Plaintiff's improvement on medications. (T. at 228-53.) Her condition was stable when she stayed on her medications (T. at 235, 239-40); she was doing well in classes (T. at 233); her symptoms resurfaced if she was not taking her medications (T. at 315); and she consistently did better when she was back on her medications (T. at 305, 307, 311). From June 2010 through January 2011, Dr. Bordonaro also noted Plaintiff was working doing home care. (T. at 294-305.) In 2009 and 2010, Dr. McCormick noted that Plaintiff's status was "improved" at several treatment visits. (T. at 259, 261, 266, and 269.)

Consultative psychologist Jeanne Shapiro, M.D., who examined Plaintiff on November 23, 2010, found that Plaintiff exhibited adequate social skills, fluent speech, clear voice, and adequate expressive and receptive language skills. (T. at 291.) Plaintiff exhibited coherent and goal oriented thought processes, she was fully oriented, she had an intact memory, and intact attention and concentration. *Id*. Plaintiff had average intellectual functioning, her recent and remote memory skills were intact, she could dress, bathe and groom herself, and she got along well with family and friends. (T. at 292.)

Based upon the above, I find the ALJ gave good reasons for affording "little weight" to Dr. McCormick's opinion. The ALJ properly noted that Dr. McCormick's finding that Plaintiff "cannot hold a job" was improper because that is an opinion reserved for the Commissioner under 20 C.F.R. § 404.1527(e)(1) and (3). (T. at 21.) *See also* S.S.R. 96-5p; *Snell*, 177 F.3d at 128, 133. As set forth above, the ALJ found Dr. McCormick's opinion conflicted with the record as a whole and was internally inconsistent with her own opinions and findings set forth her records. (T. at 22.) Under these circumstances, the ALJ correctly determined that Dr.

McCormick's findings were not entitled to controlling weight. *Halloran*, 362 F.3d at 32. The ALJ gave "significant weight" to the opinion of Dr. Shapiro and the State agency consultant, which the Court finds appropriately explained by the ALJ and well supported by Dr. Shapiro's examination of the Plaintiff and the records as a whole as outlined above. Therefore, the Court finds correct legal standards were applied by the ALJ in assigning weight to the medical opinions and that the weight the ALJ assigned to these opinions is supported by substantial evidence.

**D.     Step Five Determination**

Plaintiff does not challenge the ALJ's step five determination which was based upon the testimony of a vocational expert. (T. at 22-23; 55-63.) The Court finds no fault with the ALJ's determination at step five.

Generally, the Commissioner meets his burden at the fifth step by resorting to the applicable Medical-Vocational Guidelines (the "grids"). *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)). The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience. *Id*. "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." *Id*.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at step five to prove that a job exists in the national economy which the claimant is capable of performing. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c). Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country. 20 C.F.R. §§ 404.1566(a), 416.966(a). In making

this determination, the ALJ may apply the grids or consult a vocational expert. *See Rosa*, 168 F.3d at 78; 20 C.F.R. pt. 404, subpt. P, App. 2. If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).

However, if a claimant suffers from nonexertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also Zabala*, 595 F.3d at 410 (citing *Bapp*, 802 F.2d at 605). The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556 (GLS), 2004 WL 1144059, at *6, 2004 U.S. Dist LEXIS 5125, at * 18 (N.D.N.Y. Mar. 22, 2004). A nonexertional limitation is one imposed by the claimant's impairments that affect his ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997); 20 C.F.R. § 404.1569a(c)). This is where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (citing *Zabala*, 595 F.3d at 411). An impairment is not negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Id.* (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids). Nonetheless, the existence of nonexertional limitations does not

19

automatically preclude reliance on the Medical-Vocational Guidelines, or require that the ALJ consult a vocational expert. *Zabala*, 595 F.3d at 411. Where the claimant's nonexertional limitations do not result in an additional loss of work capacity, an ALJ's use of the Medical-Vocational Guidelines is permissible. *Id*.

Here, the ALJ properly obtained the testimony of a vocational expert to determine whether jobs existed in the national economy for an individual with the Plaintiff's age, education, work experience, and residual functional capacity. (T. at 22-23, 55-63.) The vocational expert clearly opined that there were at least three jobs in the national economy that Plaintiff could perform considering her limitations set forth in the RFC. (T. at 56-58.) Since, as determined above, the ALJ's RFC finding was based upon correct legal principals and substantial evidence, and the ALJ relied upon the testimony of a vocational expert given Plaintiff's nonexertional limitations, I find the ALJ's decision that Plaintiff was not under a disability within the meaning of the Social Security Act was proper. 20 C.F.R. § 416.920(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be affirmed and Defendant's motion for judgment on the pleadings be **GRANTED** and the complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

Dated: March 2, 2015
      Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge